UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAMION A. CAMPBELL,

                Petitioner,

       v.

WILLIAM P. BARR,
Attorney General;

THOMAS FEELEY,
Field Office Director for Detention and
Removal, Buffalo Field Office, Bureau of
Immigration and Customs Enforcement;

JEFFREY SEARLS,
Facility Acting Director Buffalo Federal
Detention Facility,

                Respondents.

_____

19-CV-341
DECISION AND ORDER

For more than three years—since April 22, 2016—the Department of Homeland

Security ("DHS") has detained the pro se petitioner, Damion A. Campbell,[1] during his

removal proceedings.  Docket Item 4 at 15.  In those three years, the government has

never given Campbell an individualized hearing to adjudicate the reasons for his

detention: his risk of flight or dangerousness.  *Id*.

What is more, Campbell may be a United States Citizen.  The United States

Court of Appeals for the Second Circuit has determined that there is "a genuine dispute

of material fact" regarding Campbell's United States citizenship, "requiring resolution by

_____

[1] Campbell is a citizen of Jamaica who has been a lawful permanent resident in
the United States since May 1999.  Docket Item 5-1 at 3.

the District Court." *Campbell v. Sessions*, 737 F. App'x 599, 602 (2d Cir. 2018) (summary order).

Campbell now petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2241 and seeks release from detention. This Court conditionally grants his petition. For the following reasons, this Court concludes that, given its length, Campbell's ongoing detention without an individualized hearing addressing the reasons for his detention violates his right to due process. Therefore, the government may not continue to detain Campbell unless a neutral decision maker determines by clear and convincing evidence that his detention necessarily serves a legitimate and compelling regulatory purpose.

## FACTUAL BACKGROUND

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security, Immigration and Customs Enforcement. Other facts, provided by Campbell, are undisputed.

### IMMIGRATION HISTORY, TIES TO THE UNITED STATES, AND CRIMINAL PROCEEDINGS

Campbell is a 35-year-old man who was born in Jamaica. Docket Item 5-2 at 22. On May 20, 1999, when he was only fifteen years old, Campbell legally entered the United States as a lawful permanent resident. Docket Item 5-1 at 3.

Campbell has strong family ties to the United States. His fiancé lives in the United States. Docket Item 6 at 23. His father, mother, sister, and two brothers are all United States citizens. Docket Item 6 at 1. He has a twelve-year-old daughter who is a United States citizen. *Id.* According to the mother of Campbell's fiancé, his fiancé is

"struggling as a single parent with three young girls" while the government detains Campbell. Docket Item 6 at 25. And Campbell's own elementary-school-aged daughter observes that although her mother "does her best to make sure [that she] and [her] sisters are well taken care of, it would be easier if [Campbell] was around." Docket Item 6 at 21.

In 2004 and again in 2006, Campbell was convicted of violations of New York State law for possessing marijuana. Docket Item 5-1 at 3. Then, in 2010, Campbell pleaded guilty to three New York state criminal charges: second degree assault, first degree burglary, and second degree criminal possession of a weapon. *Id.* All three charges stem from one criminal incident, which occurred on June 18, 2009. Docket Item 5-2 at 37-45. On the assault charge, he was sentenced to a term of imprisonment of five years and a term of post-release parole supervision of two years and six months; on the burglary charge, a term of imprisonment of eight years and a term of post-release parole supervision of five years; and on the weapons charge, a term of imprisonment of eight years and a term of post-release parole supervision of five years. Docket Item 5-1 at 3. Presumably, the sentences were to run concurrently. *See id.* On April 22, 2016, Campbell was released from New York State custody. Docket Item 5-1 at 6.

## REMOVAL PROCEEDINGS

On April 20, 2016, two days before his scheduled release, the Department of Homeland Security determined that Campbell "was amendable [sic] to removal from the United States." Docket Item 5-1 at 4. The following day, the agency "commenced

removal proceedings against [Campbell] by serving him with a Notice to Appear, which charged him with removability from the United States." *Id.*

On June 24, 2016, Campbell moved to terminate his removal proceedings, claiming that he acquired derivative United States citizenship as the child of a United States citizen. *Id.* at 6. On July 14, 2016, Immigration Judge Steven J. Connelly summarily denied Campbell's motion and ordered him removed to Jamaica. Docket Item 5-2 at 49. Campbell appealed the decision to the Board of Immigration Appeals ("BIA"). *Id.* at 22. On November 30, 2016, the BIA affirmed the immigration judge's order of removal and dismissed Campbell's appeal. *Id.* at 24.

On January 5, 2017, Campbell sought review of the BIA's decision by the Second Circuit, Docket Item 5-1 at 8; *see Campbell v. Barr*, No. 17-26 (2d Cir.), and on January 24, 2017, Campbell moved to stay his removal. Docket Item 5-2 at 78. On August 8, 2017, the Second Circuit initially denied Campbell's motion, *id.*, but Campbell moved for reconsideration and on November 21, 2017, the court stayed his removal pending adjudication of his petition for review, *id.* at 79. On September 21, 2018, the Second Circuit found that although Campbell argued "that he derived U.S. citizenship as a result of his being [a citizen's] biological son . . . the evidence of his relation with [that citizen] is disputed and therefore should be resolved by the District Court." *Campbell*, 737 F. App'x at 602. Therefore, the Second Circuit transferred the proceeding to this Court under 8 U.S.C. § 1252(b)(5)(B) "for a determination of citizenship." *Id.* at 603.

After transfer, this Court appointed counsel and held status conferences on November 30, 2018, and on December 11, 2018. *Campbell v. Barr*, No. 18-CV-1064 (W.D.N.Y.), Docket Items 5, 6, 7. This Court issued a case management order on

January 17, 2019, *id.*, Docket Item 8, which was amended in light of the government

shutdown on February 5, 2019, *id.*, Docket Item 12.  Under the amended case

management order, and consistent with the requests of Campbell's attorneys, *see id.*,

Docket Items 6, 7, discovery must be completed by September 30, 2019; dispositive

motions are due by October 28, 2019; and oral argument is scheduled for December 2,

2019.  *Id.*, Docket Items 11, 12.

### DETENTION-RELATED PROCEEDINGS

After DHS took Campbell into custody, Campbell requested a change in custody

status under 8 C.F.R. § 236.1(c).  Docket Item 5-2 at 59.  On May 11, 2016, however,

Immigration Judge Connelly denied the request and found that Campbell was subject to

mandatory detention as a criminal alien under 8 U.S.C § 1226(c).  *Id.*  Both sides

waived their rights to appeal.  *Id.*

On December 7, 2016, Campbell received a bond hearing before Immigration

Judge Connelly under *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015).[2]  But at the

hearing, Judge Connelly did not actually evaluate whether the government's evidence

---

[2] "In *Lora v. Shanahan*, [the Second Circuit] assessed the detention of aliens under 8 U.S.C. § 1226(c) and joined 'every other circuit that has considered this issue, as well as the government, in concluding that in order to avoid serious constitutional concerns, [§] 1226(c) must be read as including an implicit temporal limitation.'" *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018) (quoting 804 F.3d 601, 614 (2d Cir. 2015)).  *Lora* interpreted § 1226(c) to require "a bail hearing before an immigration judge within six months of his or her detention." *Id.* at 57-58 (quoting *Lora*, 804 F.3d at 616).  In February 2018, however, "the Supreme Court held that this interpretation of [§] 1226(c) was erroneous." *Id.* at 58.  "Specifically, the Court held in relevant part that '1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness protection purposes.'" *Id.* (quoting *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018)).

established that Campbell was a danger to the community or a flight risk. *See* Docket item 5-2 at 15. Instead, Judge Connelly determined that he "lack[ed] jurisdiction to redetermine custody due to the entry of a final administrative order of removal." *Id.* By then, the BIA had affirmed Judge Connelly's decision that Campbell did not have a valid claim to citizenship; therefore, according to Judge Connelly, Campbell's order of removal had become final and the immigration court "lacked jurisdiction to further review [Campbell's] custody status under *Lora.*" *Id.* at 16.

On March 14, 2019, Campbell filed his pro se petition for a writ of habeas corpus in this Court. Docket Item 1. On April 11, 2019, the government responded. Docket Items 4, 5. And on April 25, 2019, Campbell replied. Docket Item 6.

## DISCUSSION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). The government maintains that Campbell is validly detained under 8 U.S.C. § 1226(c). Docket Item 5 at 10-11. Campbell makes two arguments to the contrary. Docket Item 1 at 9. First, he claims that his "ongoing detention without a hearing violates due process." *Id.* Second, he argues that his "ongoing detention without a bond hearing violates the Eighth Amendment['s]" Excessive Bail Clause. *Id.*

Because Campbell is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## I. STATUTORY BASIS FOR DETENTION

The government contends that Campbell is validly detained under 8 U.S.C. § 1226(c). Docket Item 5 at 10-11. "Under § 1226(c), the 'Attorney General shall take into custody any alien' who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) (quoting § 1226(c)). The Immigration and Nationality Act defines "[t]he term 'alien'" as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(3).

The basis of Campbell's challenge to his removal is that his is a United States citizen. *See Campbell*, 737 F. App'x at 600. If Campbell is a citizen, not only would the government be foreclosed from removing him, but the government also would have "no authority under the INA to detain him, as well as no interest in doing so, and . . . his detention would be unlawful under the Constitution and under the Non-Detention Act, 18 U.S.C. § 4001." *Flores-Torres v. Mukasey*, 548 F.3d 708, 710 (9th Cir. 2008). A detainee need not "wait until his removal proceedings are completed and a final removal order is issued before he can secure habeas review of his citizenship claim." *Id.* at 713. But in this case, the removal proceeding in which Campbell raises his citizenship claim has already been transferred to this Court for resolution. *See Campbell*, 737 F. App'x at 603; *Campbell v. Barr*, 18-CV-1064 (W.D.N.Y.).

Because there is no reason why Campbell's citizenship claim will be adjudicated more quickly as part of this habeas proceeding than in the removal proceeding, this Court will not resolve the question of whether Campbell is an "alien" within the meaning of § 1226(c) at this time. If, in the removal case, this Court resolves the factual dispute in Campbell's favor because Campbell is indeed a United States citizen, this Court will

order that he be released.[3]  For now, the Court will consider Campbell's constitutional challenges to his confinement assuming that he is a lawful permanent resident alien and not a citizen.

## II.    DUE PROCESS

The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protection . . . or, in certain special and 'narrow' nonpunitive 'circumstances,' . . . where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'"  *Id.* (and cases cited therein) (emphasis in original).

"Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."  *Plyer v. Doe*, 457 U.S. 202, 210 (1982).  At the same time, however, Congress has "broad power over naturalization and immigration, [permitting it to] make[]

---

[3] In light of Campbell's pro se status, his pleadings are held "to less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Nevertheless, nothing in his petition indicates that Campbell is seeking to preliminarily enjoin the respondents from continuing to detain him in light of his citizenship claim.  *See* Docket Item 1.  Therefore, the Court does not address in this decision whether any such relief may be available.

rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

Campbell argues that "[t]o justify [his] ongoing detention, due process requires that the government establish, at an individualized hearing before a neutral decision maker, that [his] detention is justified by clear and convincing evidence of flight risk or danger, even after consideration [sic] whether alternatives to detention could sufficiently mitigate that risk." Docket Item 1 at 9. The Due Process Clause is not offended by the mandatory detention of aliens without a hearing for the "*brief period necessary* for . . . removal proceedings."[4] *Demore*, 538 U.S. at 513 (emphasis added). But "a lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532 (Kennedy, J., concurring).

In *Demore*, the Court explicitly noted that "in the majority of cases [§ 1226(c) detention] lasts less than the 90 days . . . considered presumptively valid in *Zadvydas*." *Id.* at 529. Diving even deeper, the Court noted that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days." *Id.* And "[i]n the remaining 15% of

---

[4] Because Campbell has raised a non-frivolous claim of citizenship, *see Campbell v. Sessions*, 737 F. App'x 599, 603 (2d Cir. 2018), there are serious questions regarding whether the Supreme Court's reasoning in *Demore* applies here. *See Demore v. Kim*, 538 U.S. 510, 522 (2003) (determining that Congress has the power to detain for a "brief period" during their removal proceedings in part because of Congress's constitutional power to "make rules as to aliens that would be unacceptable if applied to citizens."); *see also Zadvydas v. Davis*, 533 U.S. 678, 718 (2001) (Kennedy, J., dissenting) ("The liberty rights of the aliens before us here are subject to limitations and conditions not applicable to citizens."). But even presuming that Campbell is an alien, he still is entitled to relief.

cases, in which the alien appeals the decision of the Immigration Judge to the [BIA], appeal takes an average of four months, with a median time that is slightly shorter." *Id.* "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018).

"In light of the substantial uncertainty surrounding the detention provisions in [§] 1226(c)," *Hechavarria v. Sessions*, 891 F.3d 49, 58 (2d Cir. 2018), this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry," *Hemans v. Searls*, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019); *see also Sankara v. Barr*, 2019 WL 1922069, at *6 (W.D.N.Y. Apr. 30, 2019); *Fremont v. Barr*, 2019 WL 1471006, at *4 (W.D.N.Y. Apr. 3, 2019). "As the first step, the Court considers whether the alien's detention has been unreasonably prolonged." *Hemans*, 2019 WL 955353, at *5. "If it has not, then there is no procedural due process violation." *Id.* "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors." *Id.* (quoting 424 U.S. 319, 335 (1976)). "If the government has not provided the procedural safeguards dictated by the *Mathews* factors to an alien subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id.*

### A.     Campbell's Unreasonably Prolonged Detention Without a Hearing

"The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (cited in *Jennings*, 138 S. Ct. at 852). "[W]hen weighing the lawfulness of continued detention of an alien under the Due Process Clause," several factors determine whether detention is

unreasonably prolonged.  *Jamal A. v. Whitaker*, 358 F. Supp. 3d. 853, 858-59 (D. Minn. 2019).  For example, this Court has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal."  *Hemans*, 2019 WL 955353, at *6.

Courts have made clear that of those factors, the "most important[] factor that must be considered is the length of time the alien has already been detained."  *Sajous v. Decker*, 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018); *see also Frederick v. Feeley*, 2019 WL 1959485, at *2 (W.D.N.Y. May 2, 2019) ("the length of detention" is one of "two factors of particular importance"); *Jamal A.*, 358 F. Supp. 3d at 859 (quoting *Muse*, 2018 WL 4466052, at *4) ("How long detention has lasted 'is critical to the due-process inquiry.'").  Therefore, given the inordinate length of Campbell's ongoing detention without a bond hearing, this Court concludes that his detention is unreasonably prolonged regardless of what the other factors might suggest about its reasonableness.

*Demore*'s assumptions regarding the typical § 1226(c) detention timeframes are blown away by the length of time the government has detained Campbell without an opportunity to be heard.  *See* 538 U.S. at 529.  Campbell has been detained for more than three years—almost ten times longer than the "average" period contemplated in *Demore*.  *See id.*  What is more, Campbell's removal-related proceedings are assured to continue *at least* through December 2, 2019.  *See* Text Order, *Campbell v. Barr*, No. 18-CV-1064 (W.D.N.Y. Feb. 5, 2019), Docket Item 11.

Given the complex nature of the evidence necessary to adjudicate Campbell's citizenship claim,[5] his lawyers have asked that discovery remain open through September 2019, *see id.*, Docket Items 7, 8, a request this Court granted in January 2019, *id.*, Docket Item 8. Likewise, counsel asked for October 10, 2019, as the deadline for dispositive motions. *Id.* In light of Campbell's detention, the Court advised the parties that "[r]equests to modify or extend the dates . . .are strongly discouraged" and "will be granted only for good cause," *id.*, Docket Item 8 at 2, but the parties asked to extend those deadlines because of the impact of the government shutdown, *id.*, Docket Item 10-12. So, December 2, 2019, is now the date scheduled for oral argument, *id.*, Docket Item 11, and this Court may well need additional time to deliberate once the case is submitted. Therefore, § 1226(c) likely will mandate Campbell's detention at least through early 2020—more than three years and eight months.

In sum, the length of Campbell's detention to date—and especially how long it will be by the time this Court is able to address the merits of his citizenship claim—is considerably longer than the prolonged immigration detention in several cases in which this Court and other district courts have found that due process demands a bond hearing. *See Tao J. v. Sec'y of Dep't of Homeland Sec.*, 2019 WL 1923110, at *3 (D. Minn. Apr. 30, 2019) ("about 14.5 months"); *Reinis G. v. Rodriguez*, 2019 WL 1789515, at *4 (D.N.J. Apr. 22, 2019) ("over 22 months"); *Fremont*, 2019 WL 1471006, at *4 ("about a year); *Vargas v. Beth*, 2019 WL 1320330, at *8 (E.D. Wis. Mar. 22, 2019) ("approximately nine and a half months"); *Liban M.J. v. Sec'y of Dep't of Homeland*

---

[5] The parties in that proceeding expect a hearing to last approximately three to four days and as many as seven to nine witnesses to testify.

*Sec.*, 2019 WL 1238834, at *3 (D. Minn. Mar. 18, 2019) ("about 12 months"); *Obando-Segura v. Whitaker*, 2019 WL 423412, at *3 (D. Md. Feb. 1, 2019) (assuming "two-plus-year detention" to be unreasonable because the "Government does not object to remanding [the] case to the IJ for a bond hearing"); *Gonzalez v. Bonnar*, 2019 WL 330906, at *5 (N.D. Cal. Jan. 25, 2019); ("just over a year and will last at least 15-17 months in total"); *Jamal A.*, 358 F. Supp. 3d at 859 ("over 19 months"); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (over seven months – nine months at next court date); *Muse*, 2018 WL 4466052, at *4 (over fourteen months); *Thomas C. A. v. Green*, 2018 WL 4110941, at *5 (D.N.J. Aug. 29, 2018) (approximately fifteen months); *Vallejo v. Decker*, 2018 WL 3738947, at *4  (S.D.N.Y. Aug. 7, 2018) (length of time since petitioner's last *Lora* hearing—"almost seventeen months—is, to put it mildly, significant"); *K.A. v. Green*, 2018 WL 3742631, at *4 (D.N.J. Aug. 7, 2018) (approximately nineteen months); *Hernandez v. Decker*, 2018 WL 3579108 at *8 (S.D.N.Y. July 25, 2018), ("exceeds the nine-month mark"); *Sajous*, 2018 WL 2357266, at *13 (over eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (exceeding ten months); *see also Muse*, 2018 WL 4466052, at *4 ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.").

The government relies on *Doherty v. Thornburgh*, 943 F.2d 204, 205-08 (2d Cir. 1991) to argue that Campbell's prolonged detention does not violate his right to due process.  More specifically, the government argues that Campbell's "continued detention is attributable to his decision to appeal the immigration judge's removal order, as affirmed by the BIA, to the Second Circuit."  Docket Item 4 at 18.  The government

also notes that after the case was transferred to this Court, "Campbell, through his appointed counsel, consented to the case management order." *Id.* at 19. And the government is correct. Indeed, the reason for the deadlines to complete discovery and file dispositive motions is the time Campbell's lawyers think they need to fully and fairly vet this issue.

But the government's reliance on *Doherty* is nevertheless misplaced. In that case, the Second Circuit did not consider a procedural due process challenge to the alien's detention. In 1991, when the Second Circuit decided *Doherty*, Congress had yet to require that criminal aliens be detained under § 1226(c) without the right to an individualized hearing. Instead, "[t]he Attorney General at the time had broad discretion to conduct individualized bond hearings and to release criminal aliens from custody during their removal proceedings when those aliens were determined not to present an excessive flight risk or threat to society." *Demore*, 538 U.S. at 519.

Indeed, the court's conclusion in *Doherty* that the alien's inordinately-long detention did not inherently violate his substantive due process rights relied on "consistent administrative and judicial findings that [he] present[ed] an exceptionally poor bail risk." *Doherty*, 943 F.2d at 211. For example, Doherty received "a hearing before Judge John E. Sprizzo on October 12, 1983 in the Southern District of New York [where his] application for bail in connection with [an] extradition proceeding was denied." *Id.* at 206. Then, on December 21, 1984, Doherty was given a bond hearing before an immigration judge who "granted the request, setting bond at $200,000," but whose decision was reversed by the BIA because Doherty "presented 'such a poor bail risk that no amount of bond [would] reasonably assure his presence for future

proceedings.'" *Id.* Doherty "did not appeal [that] BIA decision." *Id.* He again applied

for bond in 1989, which was "referred to the Associate Regional Commissioner, who

denied the application." *Id.* at 208. And Doherty exercised his right to appeal that

decision to the BIA for an independent review, with the BIA affirming in March 1990. *Id.*;

*see also Doherty v. Thornburgh*, 750 F. Supp. 131, 139 (S.D.N.Y. 1990), aff'd, 943 F.2d

204 ("the evidence is overwhelming that petitioner, if released, would pose such a

substantial risk of flight that no conditions of bail could reasonably assure his surrender

for deportation").

    In contrast to all that process, Campbell has had no meaningful opportunity to be

heard because he has no right to a hearing under § 1226(c). *See Jennings*, 138 S. Ct.

at 846. In *Doherty*, the question of procedural due process rights in the immigration

detention context was simply not before the court.[6] Here, it clearly is.[7]

---

    [6] *Doherty* cannot be divorced from its unique context. Campbell is a person
raising a non-frivolous claim to United States citizenship and who is otherwise a lawful
permanent resident. In contrast, the plaintiff in *Doherty* was unquestionably an alien
who was not a lawful permanent resident. But even more importantly, although
Campbell committed a crime in New York state, he is of no importance to American
international relations. In stark contrast, the alien in *Doherty* was. He "was convicted *in
absentia* by a court in Great Britain for the murder . . . of a British army captain, which
occurred during a confrontation in Northern Ireland between members of the Provisional
Irish Republican Army . . and British soldiers." *Doherty v. Thornburgh*, 943 F.2d 204,
205 (2d Cir. 1991). Doherty had "escaped from a British prison" and "entered the
United States in February, 1982, using a false passport." *Id.* He was able to obtain
false identification, union membership, and employment at a bar with the help of
American Provisional IRA sympathizers. *Id.* The delay in his deportation stemmed in
part from Doherty's "request[] that he be deported to the Republic of Ireland" rather than
Great Britain, and the United States' determination that his "deportation to any
destination other than Great Britain would be prejudicial to American interests." *Id.* at
213. So the government's interest in detaining Campbell is nothing like the interest the
government had in detaining Doherty.

    [7] Although this Court need not consider it in this case given the length of
Campbell's detention without an individualized hearing, responsibility for delay is a
factor that courts consider when determining whether detention without an

For the foregoing reasons, Campbell's detention has been unreasonably prolonged. Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy his unreasonably prolonged detention demands.

## B.    The Process Due to Campbell

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.*, at 335, "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake," *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017).  Here, that analysis leads to the conclusion that Campbell's continued detention without an individualized hearing fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause."  *Schall v. Martin*, 467 U.S. 253, 263 (1984) (quoting *Breed v. Jones*, 421 U.S. 519, 531 (1975)).

Campbell's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity."  *Addington v. Texas*, 441 U.S. 418, 427 (1979).  Campbell has an obvious interest in his "[f]reedom from imprisonment—

_____

individualized hearing has become unreasonably prolonged.  But the government's analysis of that factor may not be accurate.  As the Second Circuit has indicated, "an immigrant may not be detained 'merely because he seeks to explore avenues of relief that the law makes available to him.'"  *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Ly v. Hansen*, 351 F.3d 263, 271 (6th Cir. 2003)).  Instead, delays factor against an immigrant who "has 'substantially prolonged his stay by abusing the processes provided to him,' . . . not [against] an immigrant who simply made use of the statutorily permitted appeals process."  *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)).  Here, by raising a viable claim that he may actually be a citizen, *see Campbell*, 737 F. App'x at 603, Campbell has not abused the process in any way.

from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," Campbell has *not* "*concede[d]* all elements that require removal." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original). Indeed, Campbell not only contests his deportability, but he does so by raising a non-frivolous claim that he is in fact a United States citizen. *Campbell*, 737 F. App'x at 603. The resolution of that issue remains pending before this Court in a separate proceeding.

Furthermore, Campbell's fiancé, elementary-school-aged daughter, parents, sister, and two brothers all live in the United States. Docket Item 6 and 23. And his fiancé has struggled to raise his family without him. *Id.* at 25. If Campbell chose not to challenge his removal, he would "lose the right to rejoin h[is] immediate family, a right that ranks high among the interests of the individual." *Landon*, 459 U.S. at 34; *see also Obergefell v. Hodges*, 135 S. Ct. 2584, 2600 (2015) (quoting *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978)) ("The right to marry, establish a home and bring up children is a central part of the liberty protected by the Due Process Clause"); *Ms. L. v. U.S. Immigration and Customs Enf't.*, 302 F. Supp. 3d 1149, 1167 (S.D. Cal. 2018) ("government conduct that arbitrarily tears at the sacred bond between parent and child" raises Due Process Clause claim).

This Court recognizes that the government's interest in detaining Campbell also may be strong. The government is "not confident" that Campbell "would abide by the conditions of release [if released on bond] and believes that [he] pose[s] a threat to the safety of the community." Docket Item 5-2 at 4. "The government's interest in preventing crime by arrestees is both legitimate and compelling." *United States v.*

*Salerno*, 481 U.S. 739, 749 (1987).  And general concerns about the risk of flight highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters."  *Doherty*, 943 F.2d at 211.

Finally, this Court concludes that in light of the procedures used thus far, there is a significant risk of an erroneous deprivation of Campbell's liberty interests.  Section 1226(c) prohibits the government from offering a detainee the opportunity to challenge whether he is, in fact, a danger or a flight risk.  *Jennings*, 138 S. Ct. at 846.  But now that Campbell's detention has become unreasonably prolonged, due process requires *some* opportunity to be heard "at a meaningful time and in a meaningful manner," *Armstrong*, 380 U.S. at 552, to challenge the statute's assumptions as applied to him. [8]

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness."  *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (internal citation omitted).  When the government seeks the civil detention of a person to achieve a compelling regulatory purpose,

---

[8] The government argues that "Campbell cannot contend that he has been held without the requisite procedural due process" because DHS has reviewed Campbell's custody status on several occasions.  Docket Item 4 at 23.  In the government's words, "DHS concluded that Campbell would be a threat to the safety of the community due to his violent criminal history . . . and the fact that he provided ICE with limited information regarding his ties to the community, non-governmental sponsor or employment prospects."  *Id.*  The government does not indicate that any kind of hearing was available to Campbell regarding these custody determinations, however.

Even if Campbell's interest were the mere deprivation of property, "some form of hearing" would be required before he could be "finally deprived of a property interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  "And, of course, an impartial decision maker is essential."  *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970).  Campbell's interest— his right to be free from a prolonged period of physical restraint—is even greater than a mere property interest.  *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  In light of these procedural due process standards, DHS's conclusory determinations about the threat Campbell might pose are clearly inadequate.

balancing the liberty interest at stake against the government's interests requires the government to show by clear and convincing evidence that detention is necessary to serve a compelling interest. *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *Fremont*, 2019 WL 1471006, at *7; *Yagao v. Figueroa*, 2019 WL 1429582, at *4 (S.D. Cal. Mar. 29, 2019); *Hemans*, 2019 WL 955353, at *8; *D. v. Sec'y of Homeland Sec.*, 2019 WL 1905848, at *6 (D. Minn. Feb. 11, 2019); *Hechavarria v. Sessions*, 2018 WL 5776421, at *8 (W.D.N.Y. Nov. 2, 2018); *Hernandez*, 2018 WL 3579108, at *11-*12; *see also Santosky*, 455 U.S. at 756 (quoting *Addington*, 441 U.S. at 424) ("clear and convincing evidence" standard applies "when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'").

That standard applies equally here. To sustain the prolonged detention of an alien subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person,'" *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the alien will appear for any future proceeding.[9] This requires consideration of less restrictive alternatives to detention. *See id. Cf. United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation

---

[9] As this Court explained in *Hemans v. Searls*, 2019 WL 955353, at *8 n.7 (W.D.N.Y. Feb. 27, 2019), a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applied to flight risk determinations for pretrial detention purposes from what is required after an unreasonably prolonged immigration detention.

burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals."); *see also Doherty*, 750 F. Supp. at 139 (S.D.N.Y. 1990), aff'd, 943 F.2d 204 ("evidence is overwhelming that [alien], if released, would pose such a substantial risk of flight that no conditions of bail could reasonable assure his surrender for deportation.").

Campbell's § 1226(c) detention has been unreasonably prolonged, and § 1226(c) does not require an individualized hearing where the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining him. The statute therefore is unconstitutional as applied to him, and his continued detention violates the Due Process Clause.

For all the above reasons, Campbell must be released unless, no later than fourteen days from the date of this decision, the government demonstrates by clear and convincing evidence before a neutral decision maker that Campbell's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community. The decision maker also must consider—and must address in any decision—whether there is clear and convincing evidence that no less restrictive alternative to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, would also reasonably address those purposes.

## III.    EXCESSIVE BAIL CLAUSE

Campbell also argues that the "categorical denial of bail to certain non citizens violates the right to bail encompassed by the Eighth Amendment." Docket Item 1 at 9.

This Court recently addressed an argument that immigration detention violates the Excessive Bail Clause. See *Sankara v. Barr*, 2019 WL 1922069, at *8-*9 (W.D.N.Y. Apr. 30, 2019). Assuming that the clause applies, it requires "that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *Salerno*, 481 U.S at 754. Although detention of criminal aliens during removal proceedings without an individualized hearing for only a brief period is not "excessive in relation to the valid interests the government seeks to achieve," *Sankara*, 2019 WL 1922069, at *9 (quoting *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007)), the same cannot necessarily be said "after unusual delay in deportation hearings." *Carlson v. Landon*, 342 U.S. 524, 546 (1952). But because this Court has determined that due process requires that Campbell receive an individualized hearing, his claim that the Excessive Bail Clause requires the same result is moot.

## CONCLUSION

For the reasons stated above, Campbell's petition, Docket Item 1, is conditionally GRANTED. **Within fourteen calendar days of the date of this Decision and Order**, the government must release Campbell from detention unless a neutral decision maker conducts an individualized hearing to determine whether his continued detention is justified. At any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Campbell's continued detention is necessary to serve a compelling regulatory purpose, such as protecting against danger to the community or risk of flight. Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less restrictive alternative to detention would also address the government's interests. In other words, Campbell

must be released unless a neutral decision maker finds by clear and convincing evidence that no condition or combination of conditions of release can reasonably assure Campbell's appearance and the safety of the community or any persons.

      SO ORDERED.

Dated:      May 14, 2019
              Buffalo, New York

                      *s/ Lawrence J. Vilardo*
                      LAWRENCE J. VILARDO
                      UNITED STATES DISTRICT JUDGE